**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PENNSYLVANIA EMPLOYEES** | : | **CIVIL ACTION** |
| **BENEFIT TRUST FUND,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **ELI LILLY & COMPANY, INC.,** | : | |
| **ASTRAZENECA PHARMACEUTICALS,** | : | |
| **L.P., and JANSSEN PHARMACEUTICA,** | : | |
| **INC.,** | : | |
| Defendants | : | **No. 07-2057** |

**M E M O R A N D U M**

PRATTER, J.                                                          OCTOBER 5, 2007

The Pennsylvania Employees Benefit Trust Fund (the "Fund") filed this lawsuit in the

Philadelphia County Court of Common Pleas in April 2007 alleging, inter alia, that the defendant

pharmaceutical companies, each a manufacturer of a different prescription drug, promoted and

marketed their respective drugs for non-medically necessary uses.[1]  The Defendants timely and

contemporaneously filed a Notice of Removal, a Joint Motion to Sever and a Joint Motion to

---

[1] In an action similar to this one, the Commonwealth of Pennsylvania sued the same three defendants who are parties in this suit, alleging that they caused the submission of fraudulent claims for prescription medications, as well as injuries resulting from the medications' side effects (the "Commonwealth Action").  The Commonwealth Action proceeded on a path almost identical to the present action, as the Commonwealth originally filed its complaint in state court, the defendant drug companies removed the action to federal court where it was assigned to this Court's docket, and the defendants filed a similar motion to stay all proceedings pending transfer to the MDL.  In addition, the Commonwealth filed a motion to remand, which the defendants opposed.  However, in the Commonwealth Action the defendants did not cite diversity jurisdiction as grounds for removal, and they did not file a motion to sever in that action.  The defendants' sole basis for removal was federal question jurisdiction.  Finding that federal question jurisdiction was not present, the Court granted the Commonwealth's motion to remand, and sent the case back to the Philadelphia County Court of Common Pleas.  See Pennsylvania v. Eli Lilly & Co., No. 07-1083, 2007 U.S. Dist. LEXIS 46946 (E.D. Pa. June 26, 2007).  The same federal question jurisdiction issue is presented in this case and is again discussed below.

Stay All Proceedings Pending Transfer by the Judicial Panel on Multidistrict Litigation. The Fund opposed the motions to sever and stay on the grounds that the Court lacks subject matter jurisdiction over the case, and the Fund submitted its Motion to Remand for the Court's consideration.[2] The Court denied the Motion to Stay insofar as the Court determined to hear the Motion to Remand, and resolve the jurisdictional issue. The case is otherwise stayed.

The Defendants oppose remand. The Court presided over oral arguments on the Fund's Motion to Remand on September 12, 2007.[3] For the reasons discussed more fully below, the Court will grant the Fund's Motion to Remand, and deny Defendants' Joint Motion to Sever without prejudice.

**BACKGROUND**

The Fund operates and funds a prescription benefit plan for Commonwealth employees and their dependants (Compl. ¶ 28). The plans operated by the Fund only permit payments for prescriptions that are medically necessary, and in accordance with medically necessary uses (Compl. ¶ 28). The Fund alleges that the Defendants have each promoted and marketed their respective drugs for non-medically necessary uses, and have caused the Fund's participants to

_____

[2] If the defendants were to be severed, complete diversity would exist with respect to Eli Lilly & Co. and AstraZeneca Pharmaceuticals, L.P., but would not exist with respect to Janssen Pharmaceutica Inc. Eli Lily is an Indiana corporation with its principal place of business in Indianapolis, Indiana; AstraZeneca is a Delaware corporation with its principal place of business in Wilmington, Delaware; Janssen Pharmaceutica Inc. is a Pennsylvania corporation, and is the general partner of Janssen, L.P., which is a New Jersey limited partnership. The Plaintiff is a Pennsylvania fund.

[3] The Court held oral argument on the Fund's Motion to Remand and directed the parties to confine their oral presentations to Defendants' claim that the Fund fraudulently joined the several defendants in this action, and that the Court should disregard the citizenship of the fraudulently-joined defendants and exercise jurisdiction over this action.

improperly submit claims for reimbursement to the Fund related to non-medically necessary uses (Compl. ¶¶ 30-33).

The Complaint states the following Pennsylvania statutory and common law claims: violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. § 201-1 et seq.; recovery of treatment costs for the Fund's participants injured by the Defendants' drugs due to a failure to warn; negligence; breach of warranty; fraud and misrepresentation; misrepresentation under Restatement (Second) of Torts § 402B; and unjust enrichment.[4]  The Fund does not allege any cause of action created by federal law, i.e., there is no count in the Complaint that presents a cause of action under any federal statutory or constitutional authority.  Defendants, however, contend that the claims implicate issues arising under federal law, specifically the  Food Drug and Cosmetic Act, 21 U.S.C. §§ 301, et seq. ("FDCA").

**DISCUSSION**

### SUBJECT MATTER JURISDICTION

Federal courts are courts of limited jurisdiction.  See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  A federal court may exercise subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Any civil action over which the district court has original jurisdiction rooted in a claim or right arising under the Constitution, treaties or laws of the United States is removable without regard to the citizenship or residence of the parties.  28 U.S.C. § 1441.  As many courts and

---

[4] In the Commonwealth Action, the Commonwealth also alleged claims of Medicaid fraud under 62 Pa. Cons. Stat. Ann. § 1407, and fraud under the Pennsylvania Assistance Contract for the Elderly, 72 Pa. Cons. Stat. Ann. § 3761-521.

commentators have recognized, "[t]he most difficult single problem in determining whether federal question jurisdiction exists is deciding when the relationship of the federal law to a case is such that the action may be said to be one 'arising under' that law."  13B Charles Alan Wright, et al., Federal Practice and Procedure 17-18 (2d ed. 1984).

A case "aris[es] under" federal law within the meaning of § 1331 if "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  Empire Healthchoice Assurance, Inc. v. McVeigh, 126 S. Ct. 2121, 2131 (2006) (citing Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983)).

The Supreme Court long has recognized that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues or "turn on substantial questions of federal law."  Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005) (citing Hopkins v. Walker, 244 U.S. 486, 490-91 (1917)).  This "slim category" of cases, Empire, 126 S. Ct. at 2137, reflects the "commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues," Grable, 545 U.S. at 312.

However, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."  Merrel Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 813 (1986).  To determine whether a state law claim "arises under" federal law for purposes of subject matter jurisdiction, the Court must inquire whether "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum

may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable, 545 U.S. at 314. Thus, even if a complaint raises a disputed and substantial federal issue, the exercise of jurisdiction must be "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." Id. at 313. Defendants, as the removing parties, bear the burden of proving that removal is proper. Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 359 (3d Cir. 1995).

Mindful that all doubts concerning the propriety of removal are to be resolved in favor of remand, Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990), the Court concludes that it must grant the Fund's Motion to Remand because the Complaint here does not raise a sufficiently substantial and disputed issue of federal law, because diversity jurisdiction is not present, and because the exercise of federal jurisdiction here would upset the "congressionally approved balance of federal and state judicial responsibilities." Grable, 545 U.S. at 308.[5]

---

[5] In Grable, the Supreme Court held that removal was proper because the plaintiff's claim depended upon the interpretation of a disputed federal statutory provision. Grable involved real property belonging to Grable & Sons Metal Products, Inc., which the Internal Revenue Service seized to satisfy a federal tax deficiency. 545 U.S. at 310. Grable received notice of the seizure by certified mail, but later sued in state court to quiet title on the grounds that the IRS had conveyed the seizure notice improperly, rendering the subsequent sale invalid. Id. at 311. The governing statute, 26 U.S.C. § 6335(a), provides that "notice in writing shall be given . . . to the owner of the property . . . or shall be left at his usual place of abode or business." Grable maintained that § 6335(a) required personal service, not service by certified mail. 545 U.S. at 311.

Upholding the federal court's jurisdiction, the Court stated that whether Grable received notice adequate under § 6335(a) was "an essential element of [Grable's] quiet title claim"; indeed, it appeared to be the only contested issue in the case. Id. at 315. The Court further noted that the meaning of the federal tax provision "is an important issue of federal law that sensibly belongs in federal court." Id. Thus, Grable "presented a nearly 'pure issue of law,' one 'that could be settled once and for all and thereafter would govern numerous tax sale cases.'" Empire, 126 S. Ct. at 2137.

In contrast, in Empire, a health insurance carrier for federal employees, Empire Healthchoice Assurance, Inc., brought an action in federal court against a former enrollee's

A.    **FEDERAL QUESTION JURISDICTION**

       1.   *Disputed Federal Issue*

As an initial matter, the federal issue must be actually disputed and essential to the

adjudication of the plaintiff's claim.  Id. at 313 (quoting Smith v. Kansas City Title & Trust Co.,

255 U.S. 180, 199 (1921)).[6]  However, in the Fund's claim as articulated here "liability may

proceed on entirely non-federal grounds."  Pennsylvania v. TAP Pharm. Prods., Inc., 415 F.

Supp. 2d 516, 518 (E.D. Pa. 2005).

The Fund has sued the Defendants for illegally promoting their respective drugs for non-

---

estate, seeking reimbursement of insurance benefits on the ground that the enrollee had recovered
damages for his injuries in a state-court tort action.  126 S. Ct. at 2127.  Empire maintained that
its contract-derived claim implicated "uniquely federal interest[s]," because (1) reimbursement
directly affected the United States Treasury and the cost of providing health benefits to federal
employees; and (2) Congress had expressed its interest in maintaining uniformity among the
states on matters relating to federal health-plan benefits.  Id. at 2130.

      While acknowledging that distinctly federal interests were involved, the Court in Empire
upheld the dismissal of the case for lack of subject matter jurisdiction on the grounds that
"countervailing considerations control."  Id. at 2134.  In particular, the reimbursement right in
question, predicated on a contract authorized by federal statute, was "not a prescription of federal
law," and Congress considered jurisdictional issues in enacting the federal statute in question and
conferred jurisdiction "where it found it necessary to do so."  Id.  The Court emphasized that
such evidence of congressional intent was "of prime importance."  Id.  Distinguishing Grable, the
Court further noted that Empire's reimbursement claim was "fact-bound and situation specific,"
whereas Grable presented a nearly "pure issue of law."  Id. at 2137.

      [6] In Grable, the action turned on whether the plaintiff had received adequate notice.
Because the parties disputed what form of notice was required under the Internal Revenue Code,
the interpretation of federal law was essential to the adjudication of the plaintiff's claim.  Grable,
545 U.S. at 315.  By contrast, in Pennsylvania v. TAP Pharmaceutical Products, Inc., 415 F.
Supp. 2d 516 (E.D. Pa. 2005), the Commonwealth's Medicaid recovery action based on alleged
fraudulent price setting involved a federal standard, but the implicated term "average wholesale
price" was not "actually disputed," and a court would "not need to ascribe any meaning to the
words 'average wholesale price'" for the plaintiff to prevail.  Id. at 524-25.  The court in TAP
declined to exercise federal jurisdiction because the term "was no more than a federal standard,"
and thus did not present a disputed issue of federal law.  Id. at 525.

medically accepted indications and non-medically necessary uses.  The Complaint alleges a series of tortious acts committed by the Defendants to encourage physicians to prescribe the defendants' products for non-medically necessary uses, which in turn caused the Fund's participants to submit claims for payment for such non-medically necessary uses of each drug. The focus is on the Defendants' alleged "wide-spread fraudulent statements and conduct, and pervasive false and misleading marketing, advertising and promotion of their antipsychotic drugs," as well as the Defendants' alleged failures to warn and affirmative misrepresentations with respect to known dangerous side effects of their drugs.  (Compl. ¶ 62.)  To prevail, the Fund must prove that the Defendants' fraudulent promotion of their respective drugs caused false or fraudulent claims to be submitted to the Fund for reimbursement, and that the Defendants' failure to provide adequate warnings of known risks caused participants to sustain injuries for which the Fund provided treatment.  Looking at the claim analytically and closely, the Court concludes that no violation of federal law is asserted in the Complaint as a basis for liability.

Thus, while the prescription of the drugs for such "off-label" uses was the alleged goal – and the alleged harm – the submission of claims for non-medically accepted indications or non-medically necessary uses was not in and of itself the tortious conduct.  In other words, the central dispute in this case, as in Empire, will be factual, that is, as posited in the Complaint, the central question is whether the Defendants' advertising and promotion methods violate Pennsylvania tort law, not what is or is not a medically accepted indication or medically necessary use.  The alleged acts and omissions by the Defendants allegedly constitute a failure to warn, negligence, breach of warranty, fraud and misrepresentation under Pennsylvania law not merely because the Defendants promoted their drug for off-label uses, but because they allegedly intentionally

7

misrepresented their drugs' efficacy and risks for such uses.

The Defendants contend that because the marketing of prescription drugs is extensively regulated by the FDA, resolution of the Commonwealth's deceptive marketing claims requires construction and application of federal law, namely, the FDCA, and its implementing regulations. With respect to the Fund's allegations that the Defendants failed to disclose or warn of the side effects of their respective drugs, the Defendants contend that, in light of the FDA's exclusive control over the labeling of medicines, the Commonwealth must necessarily establish that the FDA would have approved the allegedly necessary disclosures and that the Defendants violated the FDCA by marketing their medicines for non-approved uses. Under federal regulations, even claims in promotional labeling or advertising must be consistent with approved labeling. See 21 C.F.R. § 202.1(e)(4) (2005).

These defense arguments fail to justify removal for three reasons. First, not withstanding the emphasis employed by the Defendants in their briefing, the term "medically accepted indication" is fairly read in the Complaint as being used merely as a common standard that delimits the Medicaid fraud claim, but does not alone present a disputed federal issue. See Merrell Dow, 478 U.S. at 817. Even if the term itself is disputed, it does not define the entire scope of permissible conduct under Pennsylvania law. Simply put, it is not the act of causing the submission of a claim for a non-medically accepted indication that creates liability under the state law causes of action, but rather the act of causing the submission of a false or fraudulent claim. A false or fraudulent claim may or may not be submitted for a medically accepted indication.

Secondly, the Fund's allegation that the Defendants failed to adequately warn the Fund's participants of the risks associated with their respective drug turns not on a violation of federal

labeling standards, but rather on a violation of Pennsylvania law.  There is no liability asserted in the Complaint for mere failure to comply with federal law.  Thus, the Fund's claims this case, as in Empire, are "fact-bound" and "situation-specific."  Unlike the allegations in Grable, where the meaning of a federal statute was both disputed and an essential element of the plaintiff's state law cause of action, Grable, 545 U.S. at 314, the allegations presented here do not turn on the interpretation of federal law.  Rather, as previously noted, the central disputes in this case are factual.

Finally, the federal "issues" cited by the Defendants are affirmative defenses and, therefore, insufficient to confer subject matter jurisdiction.  Merrell Dow, 478 U.S. at 808 ("A defense that raises a federal question is inadequate to confer federal jurisdiction.") (citing Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149 (1908)).  This rule applies "with full force even when the defense involved is one of federal preemption," Guckin, 259 F. Supp. 2d at 409 (citation omitted), and is excepted where there is "complete preemption" of the state law that serves as the basis for the complaint.  Guckin, 259 F. Supp. 2d at 410.  The Court of Appeals for the Third Circuit applies complete preemption only where "(1) the federal statute that ostensibly serves as the basis for removal contains civil enforcement provisions within the scope of which the plaintiff's claim falls, and (2) there is a clear indication of Congressional intent to permit removal."  Goepel, 36 F.3d at 311.

No court has held that the federal FDCA completely preempts a plaintiff's recovery action for purposes of removal jurisdiction.  Indeed, courts in this district have found that removal based on complete preemption by the FDCA is improper because the FDCA does not provide for civil enforcement remedies.  See Guckin, 259 F. Supp. 2d at 415 (citing In re

Orthopedic Bone Screw Prods. Liablity Litig., 193 F.3d 781, 788 (3d Cir. 1999) ("It is well settled . . . that the FDCA creates no private right of action.")).  As the Supreme Court explained in Empire, "[i]f Congress intends a preemption instruction completely to displace ordinarily applicable state law and to confer federal jurisdiction thereby, it may be expected to make that atypical intention clear."  Empire, 126 S. Ct. at 2135.

While the state law causes of action presented here may incorporate a federal standard (i.e., "medically accepted indication"), they do not require the construction or interpretation of a disputed issue of federal law.  Thus, the Defendants have failed to satisfy the first prong of Grable.

2.   *Substantial Federal Issue*

"[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum."  Grable, 454 U.S. at 313.  In assessing the substantiality of a purported federal interest, courts assess the extent to which exercise of jurisdiction is consistent with congressional intent, Grable, 545 U.S. at 317 (citing Merrell Dow, 478 U.S. at 810), and look to whether the underlying federal issue is sufficiently "substantial" to demonstrate a clear indication of "a serious federal interest in claiming the advantages thought to be inherent in a federal forum," id. at 313.

According to the Defendants, the Fund's claims are embedded with federal issues that implicate the FDA's regulation of prescription drugs, and thus require a federal forum to ensure

national uniformity.[7]  However, although federal regulatory schemes may be implicated here, "it

takes more than a federal element to open the 'arising under' door."  Empire, 126 S. Ct. at 2137.

The mere presence of a federal standard embedded in a state law cause of action is not sufficient

to warrant federal subject matter jurisdiction where there is no federal remedy for a violation of

---

[7] In addition, as previously noted, there are ongoing federal Multi-District Litigation
proceedings that include cases analogous to this one.  Federal district courts, however, are split
on whether federal jurisdiction is proper with respect to such cases, and the existence of current
MDL proceedings does not automatically confer subject matter jurisdiction.  In West Virginia ex
rel McGraw v. Eli Lilly & Co., 476 F. Supp. 2d 230 (E.D.N.Y. 2007), and In re Zyprexa Products
Liability Litigation, 375 F. Supp. 2d 170 (E.D.N.Y. 2005), the Eastern District of New York, the
court to which the Zyrpexa MDL cases are assigned, denied motions to remand in closely
analogous cases, holding that "the question of the state's obligation to reimburse its insureds for
[prescriptions drugs], using funds largely provided by the federal government, is essential to the
state's theory of damages and presents a substantial and disputed federal issue under Grable."
West Virginia, 476 F. Supp. 2d at 233; see also In re Zyprexa, 375 F. Supp. 2d at 172-73 (same).
West Virginia emphasized that at issue was "not simply a federal standard, but also the added
factor of an intricate federal regulatory scheme, including detailed federal funding provisions,
requiring some degree of national uniformity in interpretation."  476 F. Supp. 2d at 234.  The
district courts for the District of Alaska and for the Western District of Texas, however, granted
motions to remand in analogous cases also slated for transfer by the Judicial Panel on Multi-
District Litigation.  In Texas v. Merck & Co., Inc., 385 F. Supp. 2d 604 (W.D. Tex. 2005), the
state of Texas sued a drug manufacturer in state court, alleging that the defendant made
misrepresentations about the safety of its drug, which Texas had placed on its Medicaid
formulary, and seeking damages and civil penalties pursuant to the Texas Medicaid Fraud
Prevention Act.  The defendant removed the case to federal court, where the district court granted
the motion to remand because the particular provisions of the state statute at issue were "not
focused on or concerned with any regulations promulgated or enforced by the Food and Drug
Administration," but rather involved "Merck's conduct toward and with Texas in requesting and
receiving approval from Texas to add VIOXX to Texas's Medicaid program."  Id. at 608; see
also Alaska v. Eli Lilly & Co., No. 06-88, 2006 WL 2168831 (D. Alaska July 28, 2006) (holding
that state of Alaska's state law claims against Eli Lilly for alleged fraud and negligent
misrepresentation, strict liability, and violation of state consumer protection statute "do not
implicate a substantial federal question" even though federal law was implicated as a "factual
predicate").  Of course, this Court is obliged to consider and follow case law from the Third
Circuit Court of Appeals in any event and has endeavored to do so in this matter as well as in the
Commonwealth Action.

the federal statute.  Merrell Dow, 478 at 810-14.[8]

As the Supreme Court emphasized in Empire, "[f]ederal courts should await a clear signal from Congress before treating such auxiliary claims as 'arising under' the laws of the United States."  Empire, 126 S. Ct. at 2127.  There is no meaningful indication that Congress intended to confer federal jurisdiction over state law causes of actions implicating the FDCA.  Considering the absence of a federal cause of action in FDCA, the Supreme Court held that "the Congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a Congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction."  Merrell Dow, 478 U.S. at 814.

Due to the absence of any indication of congressional intent to confer federal jurisdiction over claims involving the FDCA, the Defendants also fail to demonstrate the requisite substantiality required by Grable.

_____

[8] The Court reiterated this point in Grable:

> Merrell Dow should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the "sensitive judgments about congressional intent" that § 1331 requires. . . . The Court saw the missing cause of action not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues. For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action.

Grable, 545 U.S. at 318.

12

3.      *Federalism and Comity*

"[E]ven when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto," Grable, 545 U.S. at 313, because courts must consider the nature of the federal and state interests and the resulting effect that exercise of jurisdiction would have on the traditional balance of responsibilities between state and federal courts.  Id. at 313-14.  The proper "arising under" jurisdiction inquiry is:  "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  Id. at 314.  Thus, "the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of §1331."  Id.

Such federalism concerns carry additional weight when applied to claims brought by the states.  The Supreme Court's warning that "considerations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it," is apt here.  Franchise Tax Bd., 463 U.S. at 22 n.22.

Adjudication of the state law claims presented here will not conflict with or otherwise disturb the federal interest in and need for uniformity with respect to the regulatory schemes governing prescription medications.  The exercise of federal jurisdiction, however, would upset the balance between state and federal courts because it would, in direct contravention of Merrell Dow and Grable, open the federal courthouse to any number of state law causes of actions that invoke a federal standard or stand against the backdrop of a federal regulatory scheme.  Where such claims are fact-specific and wholly based on state law, federal jurisdiction will neither

13

advance national uniformity, nor ensure the correct precedential interpretation of federal law. Rather, the federal court would be engaged primarily in the interpretation and application of state law, a task to be left to the state courts, particularly where there is no unambiguous indication that Congress intended to confer federal court jurisdiction. Moreover, any interest the federal government may have in a federal forum must be balanced with the Commonwealth of Pennsylvania's interest in developing its law.

In sum, the Court concludes that this case does not belong in the "special and small category" of cases that <u>Grable</u> exemplifies. <u>See</u> <u>Empire</u>, 126 S. Ct. at 2136.

## B.   DIVERSITY JURISDICTION

Defendants also removed this action to federal court based on the alleged presence of diversity jurisdiction. As the Court noted above, both the Fund and Janssen are Pennsylvania entities. Thus, viewing the Complaint as filed, diversity jurisdiction is not present.[9]

Defendants argue that the Fund improperly joined all three defendant drug companies as parties in a single action. Therefore, whether Defendants' removal was proper depends on whether the Court determines that the Fund improperly joined the several defendants as parties to this action. If joinder was improper, Defendants argue, the Court should disregard the citizenship of the misjoined parties whose presence, namely, Janssen, destroys diversity.

An action based upon diversity shall be removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the state in which such action is brought."

---

[9] Defendants argue that if they were severed from one another, such that the Fund would have to commence a separate action against each of them, complete diversity would exist as to Eli Lilly and AstraZeneca, and the Fund's actions against those two defendants could remain in federal court. Diversity jurisdiction would not exist as to Janssen, so in either event, the Fund's action against Janssen would be remanded to state court.

28 U.S.C. § 1441(b).  Thus, only if an action could have originally been brought in federal court may it be removed from state court to federal court.  Chaney v. Gate Pharms. (In re Diet Drugs Prods. Liab. Litig.), No. 98-20478, 1999 U.S. Dist. LEXIS 11414, at *7 (E.D. Pa. July 16, 1999).

Our Court of Appeals, in noting the general proposition that plaintiffs may name "those parties whom they choose to sue, subject only to the rules of joinder of necessary parties," has stated that a district court should not "interfere with . . . plaintiff's election unless the plaintiff had impermissibly manufactured diversity or used an unacceptable device to defeat diversity." Boyer v. Snap-On Tools Corp., 913 F.2d 108, 110 (3d Cir. 1990).  In Boyer, the Court of Appeals stated that joinder of a defendant is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." Id. (quotations omitted).[10]

In the removal context, "a removing party who charges that a plaintiff has fraudulently joined a party to destroy diversity of jurisdiction has a 'heavy burden of persuasion.'" Id. at 111 (quoting Steel Valley Auth. v. Union Switch & Signal Div., Am. Standard, Inc., 809 F.2d 1006, 1012 n.6 (3d Cir. 1987)).  In evaluating the alleged fraud, the district court must "focus on the plaintiff's complaint at the time the petition for removal was filed." Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992) (quoting Steel Valley, 809 F.2d at 1010 (citation omitted)).  The district  court must assume as true all factual allegations of the complaint, id. at 851-52

---

[10] As the Court of Appeals for the Fifth Circuit has held, and the Third Circuit Court of Appeals has acknowledged, joinder of a defendant is also fraudulent where there is "outright fraud in the plaintiff's pleadings of jurisdictional facts." B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981); see also Boyer, 913 F.2d at 111 (citing B., Inc. with approval as to this proposition).

(citing Steel Valley, 809 F.2d at 1010 (citation omitted)), and "resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff," id. (quoting Boyer, 913 F.2d at 111)). The Court of Appeals has provided that a district court "can look to more than just the pleading allegations to identify indicia of fraudulent joinder," In re Briscoe, 448 F.3d 201, 219 (3d Cir. 2006), but "a district court must not step 'from the threshold jurisdictional issue into a decision on the merits.'" Id. (quoting Boyer, 913 F.2d at 112); see also Batoff, 977 F.2d at 852). Ultimately, however, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Boyer, 913 F.2d at 111 (quoting Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983)).

In this case, Defendants have not argued that the Fund falsely alleged Janssen's or the Fund's own Pennsylvania citizenship, i.e., there is no "outright fraud in the plaintiff's pleadings of jurisdictional facts." B., Inc., 663 F.2d at 549. Furthermore, the Fund's Complaint asserts nearly identical allegations against all three defendants without distinguishing among them, and, for the purposes of the Fund's Motion to Remand, the Defendants do not argue that any of the Fund's claims are baseless. Thus, this is not a case where the Fund's claims against any one defendant (or Janssen in particular) are "defective as a matter of law." Boyer, 913 F.2d at 111.

However, the Defendants, citing Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir. 1996), also argue that the "procedural misjoinder" of three allegedly unrelated defendants in one action may not defeat their right, as defendants, to remove an action to federal court based on diversity jurisdiction. In Tapscott, the Court of Appeals for the Eleventh Circuit affirmed the district court's finding that there was an "improper and fraudulent joinder [of

defendants], bordering on a sham." Id.  The Tapscott court, relying on Wilson v. Republic Iron & Steel Co., 257 U.S. 92 (1921),[11] held that plaintiffs' attempt to join certain defendants in the same civil action was so egregious as to constitute fraudulent joinder because the transactions between certain plaintiffs and defendants had "no real connection" to the transactions involving the other parties.  Tapscott, 77 F.3d at 1360.  The Tapscott court recognized that fraudulent joinder also can be found where misjoinder is "so egregious as to constitute fraudulent joinder." Id.  The court noted that not just any misjoinder may be labeled fraudulent; rather, in order to be considered fraudulent the misjoinder of parties must be "egregious."  Id.  The court stated that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action."  Id.

　　　　The Defendants rely on two cases from this district in which Tapscott was cited with approval and where the court found that certain claims and parties were misjoined, disregarded the citizenship of procedurally joined parties, and exercised diversity jurisdiction over the plaintiffs' claims, as the Defendants ask the Court to do here.  See Weaver v. Am. Home Prods. Corp. (In re Diet Drugs Prods. Liab. Litig.), 294 F. Supp. 2d 667 (E.D. Pa. 2003); Chaney v. Gate Pharms. (In re Diet Drugs Prods. Liab. Litig. ), No. 98-20478, 1999 U.S. Dist. LEXIS 11414

_____

　　　　[11] In Wilson, the Supreme Court addressed a case where, but for the joinder of a co-employee defendant, "the case plainly was one which the employer was entitled to have removed into the District Court on the ground of diverse citizenship."  257 U.S. at 98.  The Court looked to the defendant's petition for removal, and deduced the "rational conclusion" that the co-employee "was joined as a defendant without any purpose to prosecute the action in good faith as against him and with the purpose of fraudulently defeating the employer's right of removal."  Id.  The Supreme Court further noted that the plaintiff did not object to the defendant's characterization of the plaintiff's claims in the defendant's petition for removal, and, therefore, assented to their truth.  The Court held that defendant's petition for removal was "sufficient, in that [it] disclosed that the joinder was a sham and fraudulent and hence was not a legal obstacle to the removal or to the retention of the cause by the District Court."  Id.

(E.D. Pa. July 16, 1999).[12]  In both cases, the court sat as the transferee court in a consolidated,

multi-district mass tort litigation involving certain "Fen-Phen" diet drugs.[13]  Numerous unrelated

plaintiffs had joined together to sue various diet drugs manufacturers and individual defendants

---

[12] Chaney addressed similar issues as Weaver, in that the plaintiffs in Chaney also joined several seemingly unrelated plaintiffs to avoid diversity jurisdiction.  The Chaney court initially agreed with the Tapscott court that a finding of mere misjoinder does not itself warrant a finding of fraudulent misjoinder.  Chaney, 1999 U.S. Dist. LEXIS 11414, at *15 (citing Tapscott, 77 F.3d at 1360).  However, the Chaney court found that the plaintiffs' pleading went "well beyond mere misjoinder."  Id.  The plaintiffs attempted to join persons from seven different states as plaintiffs; the only claimed "connection" between the plaintiffs was that each of them had ingested some combination of the diet drugs at issue.  The court noted that the plaintiffs did not allege that they took the same drug or combination of drugs, or that they received the drugs from the same source or any other similar connection.  Id.  The court noted that although the complaint was filed in Alabama, only two plaintiffs were citizens of Alabama while the remaining plaintiffs were citizens of six different states.  Id.  The plaintiffs failed to provide any logical basis for the proposed joinder of the nonresident plaintiffs (e.g., that they received or purchased diet drugs in Alabama or from a source located in Alabama), which the court indicated was particularly noteworthy in light of the fact that most of the nonresident plaintiffs resided in a jurisdiction in which at least one defendant was a citizen.  Id. at *16.  In finding that the multiple non-resident plaintiffs were fraudulently joined, the court found that "the structure of [plaintiffs'] pleading is devoid of any redeeming feature as respects the underlying purposes of the joinder rules.  The joinder rules are designed 'to promote trial convenience and expedite the final determination of disputes.'"  Id. (quoting Saval v. BL Ltd., 710 F.2d 1027, 1031 (4th Cir. 1983) (citing Mosley v. General Motors Corp., 497 F.2d 1330 (8th Cir. 1974))).  Instead, "[t]he joinder of several plaintiffs who have no connection to each other in no way promotes trial convenience or expedites the adjudication of the asserted claims."  Id.  To the contrary, "the joinder of such unconnected, geographically diverse plaintiffs that present individual circumstances material to the final outcome of their respective claims would obstruct and delay the adjudication process."  Id.  The court found that the attempted joinder of unconnected plaintiffs "wrongfully deprives Defendants of their right of removal."  Id. at *17.  Like the Weaver court, the court in Chaney denied the plaintiffs' motion to remand and dismissed the fraudulently joined plaintiffs' claims without prejudice.  Id.

[13] In December of 1997, the Judicial Panel for Multidistrict Litigation transferred all the Fen-Phen-related federal actions to the Honorable Louis C. Bechtle in this district court, creating Multidistrict Litigation 1203 ("MDL 1203").  Judge Bechtle issued the Chaney decision in 1999.  When Judge Bechtle retired, he was succeeded as the presiding district judge over MDL 1203 by the Honorable Harvey Bartle III, currently Chief Judge of the United States District Court for the Eastern District of Pennsylvania.

and, in each case, the presiding court addressed the propriety of removal in the context of whether the plaintiffs had properly joined other plaintiffs, some of which seemingly were chosen only because they shared a state of residence with one of the defendants.  In addition, the Weaver court considered whether plaintiffs' joinder of certain defendants was proper.

In Weaver, one of the defendants had timely removed six lawsuits to federal court based on diversity jurisdiction, arguing that the federal court should ignore the citizenship of the non-diverse defendants as well as the non-diverse plaintiffs because they were fraudulently joined.  294 F. Supp. 2d at 670-71.  In each of the six cases, one plaintiff was a citizen of Georgia and one plaintiff was a citizen of New Jersey.  Likewise, in each case the plaintiffs sued corporations that were citizens of Georgia and New Jersey, respectively.  The defendant New Jersey corporation argued that removal was proper because all of the Georgia parties (plaintiffs and defendants) and the New Jersey plaintiffs were fraudulently joined.

The Weaver court cited the heavy burden a removing party faces in establishing fraudulent joinder, but noted that "procedural misjoinder" would work equally well to prevent a plaintiff from improperly alleging claims against non-diverse defendants, or joining its claims with non-diverse plaintiffs in an effort to defeat the court's diversity jurisdiction.  The court noted that "procedural misjoinder" of claims against a non-diverse defendant cannot be used to defeat removal "where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard."  Id. at 673 (quoting 14B Wright & Miller, Federal Practice & Procedure § 3723 at 656-57 (3d ed. 1998)).  The Weaver court stated that in order to remand the case to state court, the plaintiff "need only establish that there is a 'reasonable basis' for finding at least one claim to be colorable against any of the Georgia defendants, that is, not 'wholly

insubstantial and frivolous,' or that New Jersey plaintiff, who are not diverse from [defendant] Wyeth, are not egregiously or fraudulently misjoined." <u>Id.</u> (quoting <u>Batoff</u>, 977 F.2d at 852).

The <u>Weaver</u> court applied state joinder law in determining whether certain parties were fraudulently joined. <u>See id.</u> ("Federal law does not govern whether a plaintiff has stated a viable claim against a non-diverse defendant for purposes of fraudulent joinder."). Under Georgia's permissive joinder statute, which, the court noted, is virtually identical to Federal Rule of Civil Procedure 20(a), "if any New Jersey plaintiff makes at least one claim that arises out of the 'same transaction [or] occurrence' as those of the Georgia co-plaintiffs in their individual cases, then joinder is proper, and diversity jurisdiction does not exist." <u>Id.</u> at 677. The court noted that it must remand if "there is any reasonable basis for joining" the various plaintiffs in the six actions. <u>Id.</u>

Employing different rationale depending on the circumstances of the various plaintiffs' claims and the particular defendants' activities, the <u>Weaver</u> court found that all of the Georgia defendants and the New Jersey plaintiffs were fraudulently joined. In particular, the court found that in each of the removed cases, a single non-diverse plaintiff was egregiously and fraudulently misjoined to evade federal jurisdiction. The court rejected plaintiffs' argument that each plaintiff's claims against the various defendants arose from the "same series of occurrences" in that each claim arose "out of the ingestion of either Pondimin or Redux and [is] against the same defendants under the same legal thesis." <u>Id.</u> at 678. Citing holdings from other MDL 1203 cases, the court held that claims of plaintiffs who did not receive the drugs from an identical source do not satisfy the transaction or occurrence requirement. <u>Id.</u> In <u>Weaver</u>, the plaintiffs were prescribed drugs by different doctors at different times, and the plaintiffs' particular

circumstances differed considerably in that they did not ingest the same drugs (or combination of drugs) for the same amount of time.  Because "[d]ifferent evidence surely will be required to litigate the claims of each of the New Jersey plaintiffs, such that judicial economy would not be served by trying them together," the Weaver court found that the New Jersey plaintiffs were "egregiously and fraudulently misjoined under Georgia law."  Id.  Accordingly, the court ignored those parties' citizenship and determined that removal was proper because diversity jurisdiction existed.  Id. at 678.

Defendants here ask the Court to apply Tapscott's "egregious joinder" analysis to this case.  However, for the reasons provided below, the Court concludes that our Court of Appeal's precedents require the Court to remand this action.  As noted above, Defendants do not argue that the Fund has failed to assert any colorable claim against Janssen, the non-diverse defendant (or, for that matter, against Eli Lilly or AstraZeneca, respectively).  In their responsive papers, the Defendants in no way attack the substance of the Fund's claims or any other defendant.  They assert only that the Fund's claims against each of the Defendants should not be joined in a single lawsuit.

Defendants argue that joinder is improper under the Pennsylvania (and federal) permissive joinder rules because the Fund's claims against the various defendants do not arise from the same transaction, occurrence, or series of transactions or occurrences.  The test for joinder under Pennsylvania Rule 2229(b)[14] is twofold:  joinder is proper if the plaintiff (1) asserts

---

[14] Pennsylvania's permissive joinder rule, Rule 2229(b), which was adapted from federal corollary rule, provides in pertinent part:
> A plaintiff may join as defendants persons against whom the plaintiff asserts any
> right to relief jointly, severally, separately or in the alternative, in respect of or
> arising out of the same transaction, occurrence, or series of transactions or

a right to relief against each defendant in respect of or arising out of the same transaction,

occurrence, or series of transactions or occurrence <u>and</u> (2) the action presents at least one

question or law or fact common to the liability of all the defendants in the action.  <u>See</u> Pa. R. Civ.

P. 2229(b).  Defendants argue that the only commonality in the Fund's claims asserted against

the various defendants "is the contention that each defendant engaged in allegedly similar

business practices and separately, as a result of those practices, caused damages to the [Fund]."

(Defs.' Mot. Sever 6.)[15]

      Defendants are correct that, based on the face of the Complaint, the Fund does not allege

that the Defendants acted in concert or in any way conspired to harm the Fund.  However, from

the very first paragraph of the Complaint, the Fund alleges that all three Defendants engaged in

the same allegedly deceptive marketing practice of promoting their respective drugs for non-FDA

approved uses.  (<u>See</u> Compl. ¶ 1.)  Throughout the Complaint, the Fund describes a common

course of conduct – a strategy implemented by committing a series of unlawful acts and practices

– that, according to the Fund, was pursued by all three Defendants in a similar, if not identical,

---

      occurrences if any common question of law or fact affecting the liabilities of all
      such persons will arise in the action.

Pa. R. Civ. P. 2229(b); <u>see also</u> <u>Siranovich v. Butkovich</u>, 366 Pa. 56, 62-63 (Pa. 1950) (noting
that Pennsylvania's Rule 2229(b) is an adaptation of the federal rule, which has been described as
"very liberal").  Rule 20(a), the federal permissive joinder rule, in pertinent part, states:

      All persons . . . may be joined in one action as defendants if there is asserted
      against them jointly, severally, or in the alternative, any right to relief in respect
      of or arising out of the same transaction, occurrence, or series of transactions or
      occurrences and if any question of law or fact common to all defendants will arise
      in the action.

Fed R. Civ. P. 20(a).

     [15]  Defendants have not argued that common factual and legal questions are not present in
this case, as required by the second prong of the Rule 2229(b) test; the similarity of the claims
against each defendant makes it clear that there are common issues.

manner.  (See, e.g., Compl. ¶¶ 30-32, 40, 50-57, 59, 65-66).  The Defendants' common goal,

according to the Fund, was to expand non-medically necessary usage for their respective drugs.

(See Compl. ¶ 66.)  The Fund alleges that all three of the Defendants' drugs caused the same

types of injuries to Fund participants who ingested the one or more of the drugs (See, e.g.,

Compl. ¶¶ 45-46, 58, 60), which, in turn, caused the Fund to suffer millions of dollars in

damages in addition to injuring the health of individuals participating in the Fund.  (See, e.g.,

Compl. ¶¶ 21, 165).

 The Court is mindful of our Court of Appeals' admonition that a district court may not

"in the guise of deciding whether the joinder was fraudulent, [step] from the threshold

jurisdictional issue into a decision on the merits."  Boyer, 913 F.2d at 112 (citing Chesapeake &

Ohio Ry. v. Cockrell, 232 U.S. 146 (1914)). In determining whether claims against several

defendants were fraudulently joined, the Court's inquiry is "less searching than that permissible

when a party seeks to dismiss a claim under Rule 12(b)(6) of the Federal Rules of Civil

Procedure," Weaver, 294 F. Supp. 2d at 673 (citing Batoff, 977 F.2d at 852), and certainly is "far

different from [a] summary judgment type inquiry," Boyer, 913 F.2d at 112.[16]

---

[16] As one commentator has noted, the Supreme Court has not clarified what standard is
appropriate for determining when a claim is fraudulently joined and what information or
evidence federal district courts should consider in make such determinations.  See James M.
Underwood, From Proxy to Principle: Fraudulent Joinder Reconsidered, 69 Alb. L. Rev. 1013,
1022 (2006).  Consequently, the author posits, circuit and district courts "have been left to
fashion their own standard to the rather amorphous concept of fraudulent joinder," and have
lacked success in that regard, resulting in the emergence of at least three standards.  Id.  The first
is a standard that resembles a Rule 12(b)(6) review of the plaintiff's state court complaint, i.e.,
"[o]nly if the removing defendants can demonstrate, on the face of the plaintiff's complaint, that
no claim is stated against the local defendant may the district court ignore the local defendant's
citizenship."  The author contends that this approach is arguably the one followed by the majority
of federal courts, and discusses the approach endorsed by the Third Circuit Court of Appeals
within the context of this "majority" approach.  Secondly, some courts "engage in a much more

As described above, Defendants essentially ask the Court to employ a straightforward Rule 2229(b) (or Rule 20) analysis in inquiring whether the Fund's claims against the several defendants are "misjoined."  However, a "misjoinder" inquiry is different than a "fraudulent joinder" inquiry, and, as the <u>Tapscott</u> court made clear, mere misjoinder is not "fraudulent" joinder.  <u>Tapscott</u>, 77 F.3d at 1360.  Our Court of Appeals has stated that "[w]hen a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand <u>only</u> by demonstrating that the non-diverse party was fraudulently joined."  <u>Batoff</u>, 977 F.2d at 851 (emphasis added).  Moreover, the Court of Appeals recently affirmed that "a district court must rule out any possibility that a state court would entertain the cause [of action] before holding that joinder of a non-diverse defendant was fraudulent."  <u>In re Briscoe</u>, 448 F.3d 201, 219 (3d Cir. 2006) (<u>citing</u> <u>Batoff</u>, 977 F.2d at 851).

In this case, the Fund has asserted "colorable claims . . . against . . . diverse and non-diverse defendants alike," <u>Boyer</u>, 913 F.2d at 113,[17] and the Court finds that there is a "reasonable basis in fact or colorable ground supporting the claim against" Janssen, the non-diverse defendant, if only for the simple reason that Defendants have not argued otherwise.  <u>Id.</u> at

_____

probing summary judgment-like critique of the plaintiff's claim against the local defendant."  <u>Id.</u> at 1023.  In circuits that apply this standard, the defendant may demonstrate fraudulent joinder by offering evidence pointing to the lack of liability by the local defendant.  <u>Id.</u>  A third approach falls somewhere in between a Rule 12(b)(6) and a Rule 56 approach, and "can be characterized as a Federal Rule of Civil Procedure 11 probe into the plaintiff's good faith in alleging a claim against the local defendant."  <u>Id.</u>

[17]  <u>See</u> <u>Boyer</u>, 913 F.2d at 113 ("[W]e hold that where there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its views of the merits of those claims or defenses.  Instead, that is a merits determination which must be made by the state court.").

110.  It would be difficult for them to have done so given the nature of the Complaint here.  The

Defendants have not offered any convincing case law indicating that, as a matter of law, a

Pennsylvania state court applying Pennsylvania's joinder rules would not permit this action to be

tried jointly against all three Defendants.  These factors warrant remand.

        In addition, the Court notes that in Tapscott, particular plaintiffs were "matched" with

particular defendants against whom they alleged individual claims.  See Tapscott, 77 F.3d at

1359.  Thus, the situation the Tapscott court addressed is different from the situation presented

here, where the Fund has asserted multiple claims against all three of the Defendants without

distinguishing among them.  Unlike Tapscott, Defendants in this case cannot credibly argue that

Janssen has "no real connection with the controversy" that forms the basis of the Fund's claims

against Eli Lilly and AstraZeneca.  Id. (quoting Wilson, 257 U.S. at 97).[18]

_____

        [18] At this early stage, even if the Court were to apply a Tapscott-like analysis, the Court
cannot conclude that joinder of the multiple defendants was improper, let alone "egregious."  As
noted above, the Fund's allegations against all of the Defendants involve similar factual and
identical legal issues.  This is not a case where a plaintiff has improperly tacked on frivolous
claims against unnecessary defendants in order to defeat a federal court's diversity jurisdiction.
To the contrary, the Fund has asserted presumptively viable claims against three Defendants,
each of whom, the Fund alleges, engaged in virtually identical wrongful conduct, which harmed
the Fund in an identical manner.  The Fund claims that the multiple defendants, each a
manufacturer of a different prescription drug, engaged in "parallel conduct," including the
chemical development of the drugs, their introduction and promotion, and their purported
advantages over other drugs.  The Fund alleges that the side effects and usage restrictions for
each defendant's drug are similar, the Fund's procedures for processing claims and paying for the
drugs are identical for each drug, and the methods for identifying drug purchasers and
determining damages from the Fund's business records will be uniform across all claims.  That
the Fund's claims present at least one question or law or fact common to the liability of all three
defendant drug manufacturers is without question.  Whether defendants' "parallel" conduct arose
from the same "transactions or occurrences" presents a more complicated inquiry, but, ultimately,
such an inquiry is more appropriately undertaken by the state courts should the opportunity to do
so present itself.  However, based on the pleadings before the Court, it cannot be said that the
Fund's claims are "wholly insubstantial and frivolous," Batoff, 977 F.2d at 853, or that its claims
against Janssen are a mere "sham" designed to defeat diversity.

Moreover, the Court finds that the Eastern District decisions cited by Defendants, in which the courts applied Tapscott's analysis, are distinguishable.[19]  In the Court's view, the circumstances of those cases were unique in that the district court sat as an MDL court, which enabled the court to tap into the vast institutional knowledge gained in the many years of addressing claims of plaintiffs in that particular diet drug litigation.  In those cases, the court's precedents in different contexts, i.e., at the Rule 12(b)(6) motion to dismiss phase, mandated, for example, that plaintiffs who did not receive the same diet drugs from the same physician were not entitled to join their claims together in one lawsuit.  Similarly, the court drew from its precedents in concluding that certain drug  manufacturers had been improperly joined as defendants.[20]

---

[19] A Lexis search indicates that only three courts within the Third Circuit have cited or followed Tapscott in applying some form of Tapscott's "egregious misjoinder" analysis.  All three of those cases were related to the MDL 1203 cases referred to above.  In addition to Chaney and Weaver, discussed in detail above, in In re Diet Drugs Prods. Liab. Litig., MDL Docket No. 1203, Civ. No. 98-20034, Civ. No. 98-20077, 1998 U.S. Dist. LEXIS 5956, at *11 n.5 (E.D. Pa. Apr. 16, 1998), Judge Bechtle cited Tapscott but did not explicitly rely on it in finding that the plaintiff's claims against the defendants at issue – a small local pharmacy that went out of business eleven years prior to plaintiff's suit and another local pharmacy that was acquired by a large national pharmacy chain one year before the suit – were "improper at best and fraudulent at worst."  Id. at *13.  The court noted that the claims against these two pharmacies were unique to a certain plaintiff, and that based on the evidence presented, those two defendants "were fraudulently joined and included in the action for the purpose of destroying diversity of citizenship."  Id.  The court severed the plaintiff's claims against those pharmacies and remanded those claims to state court.  Id.

[20] For example, in Weaver the court was asked to determine whether a certain defendant manufacturer of the drug phentermine was fraudulently joined.  The court noted that it had "extensively addressed the fraudulent joinder of phentermine defendants" in prior MDL 1203 cases, and cited several recent cases that all held that certain phentermine defendants "were added as parties to the litigation purely to prevent federal jurisdiction."  Weaver, 294 F. Supp. 2d at 674.  In the previous cases that had addressed this issue, the courts had found that "no real cause of action existed against phentermine defendants," and, consequently, that the phentermine defendants were fraudulently joined.  Id.  In Weaver, the court reached the same conclusion as

In addition, at oral argument defense counsel submitted several cases that they argue are potential analogues to assist the Court to determine the joinder issue presently here. Specifically, counsel offered cases where the issue of misjoinder under Federal Rule 20(a) was raised in federal court in the context of trademark infringement, unfair competition and false advertising, see Colt Defense LLC v. Heckler & Koch Defense, Inc., No. 04-258, 2004 U.S. Dist. LEXIS 28690 (E.D. Va. Oct. 22, 2004) (granting defendants' motion to sever; finding that plaintiff's claims that separate defendants each independently infringed the same trademark did not arise from the same transaction or occurrence), and patent infringement, see Philips Elec. N. Am. Corp. v. Contec Corp., No. 02-123, 2004 U.S. Dist. LEXIS 4255 (D. Del. Mar. 12, 2004) (granting defendants' motion to sever; holding that joinder of plaintiff's claims against two unrelated businesses for allegedly infringing the same patent was improper); Androphy v. Smith & Nephew, Inc., 31 F. Supp. 2d 620 (D. Ill. 1998) (same), and cited a state court case from Alabama in which the court applied Alabama's permissive joinder rules in determining that plaintiffs' claims against multiple defendants did not belong together, see Ex parte Novartis Pharms. Corp. (In re State of Alabama v. Abbott Labs., Inc.), – So. 2d –, 2007 WL 1576114 (Ala. June 1, 2007) (per curiam) (not yet released for publication).[21]  The courts in each of these case

---

applied to the facts of that case, holding that the plaintiffs had "'no real intention in good faith to seek a judgment against the phentermine defendants and that as a result the phentermine defendants are fraudulently joined in these actions.'"  Id. (citation omitted).

[21] The Alabama action shares some factual similarities with the instant action.  In that case, the State of Alabama sued 73 pharmaceutical companies alleging that those companies falsely and deceptively priced and marketed their prescription drugs, and that the Alabama Medicaid Agency relied on that pricing in reimbursing Alabama physicians and pharmacies for prescription-drug costs.  Alabama alleged that each drug company independently caused the state Medicare agency to pay the providers more for dispensing that company's drugs to Medicaid patients than the providers paid for the drugs, allowing the providers to profit on their sale.

found that plaintiff's claims against the multiple defendants had been improperly joined because the respective plaintiffs' claims did not satisfy the "transactions or occurrences" test under the applicable rule.

Defense counsel valiantly argued that the cases cited above are factually equivalent to the instant case, and warrant the same result, namely, severance of the claims.  While factual similarities may exist, however, the distinguishing factor is a procedural difference.  In each of the cases cited by Defendants on this issue, the court's decision was made in the context of a defense motion to sever.  Unlike the instant case, the subject matter jurisdiction of the court entertaining the motion to sever was not in question.  Stated differently, the court in each of these cases was considering the  defendant's motion after its subject matter jurisdiction had been firmly established.  That is not the case here.

In light of the "heavy burden of persuasion" shouldered by a removing party charging that a plaintiff has fraudulently joined a party to destroy diversity of jurisdiction, the Court finds that the Fund's joinder of the three moving Defendants in this action was not fraudulent.  Accordingly, because the Fund and Janssen are both Pennsylvania entities complete diversity

---

Alabama claimed that each drug company reported false pricing benchmarks and failed to disclose discounts or rebates to the Medicare agency that had been made available to the providers, and that each company then marketed this profit margin to the providers to encourage them to use that company's products rather than those of its competitors.

In that case, Alabama's complaint alleged that over approximately 15 years each defendant drug company acted individually and independently of any other company and at various times and in various ways.  The state trial court denied Novartis's motion to sever the claims against the various defendants.  Novartis then petitioned for a writ of mandamus to the Alabama Supreme Court.  Applying Alabama's permissive joinder rule, which the court noted is identical to the federal rule in all relevant respects, the Alabama Supreme Court found that each defendant's "individual and independent" action did not satisfy the "transaction or occurrence" test for permissive joinder.  The Alabama Supreme Court directed the trial court to vacate its order denying Novartis's motion to sever, and to sever the claims against all companies.

does not exist.  Therefore, diversity jurisdiction also does not exist and removal was not proper.

**CONCLUSION**

Because the Defendants have failed to satisfy their burden of demonstrating that the state law causes of action presented here raise a disputed and substantial question of federal law, because the Court's exercise of jurisdiction would contravene principles of federalism and comity, and because diversity jurisdiction is not present here, the Court must grant the Fund's Motion to Remand.  In addition, because the issues raised in Defendants' Joint Motion to Sever are more appropriate for determination in the state court, the Court will deny Defendants' motion in that regard without prejudice.

An Order consistent with this Memorandum follows.


S/Gene E.K. Pratter
Gene E.K. Pratter
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PENNSYLVANIA EMPLOYEES** | : | **CIVIL ACTION** |
| **BENEFIT TRUST FUND,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ELI LILLY & COMPANY, INC.,** | : | |
| **ASTRAZENECA PHARMACEUTICALS,** | : | |
| **L.P., and JANSSEN PHARMACEUTICA,** | : | |
| **INC.,** | : | |
| **Defendants** | : | **No. 07-2057** |

**O R D E R**

**AND NOW**, this 5th day of October, 2007, upon consideration of the Plaintiff's Motion to Remand (Docket No. 7), the Defendants' response thereto (Docket Nos. 15), Plaintiff's reply (Docket No. 18), Defendants' Joint Motion to Sever (Docket No. 2), Plaintiff's response thereto (Docket No. 8), and Defendants reply (Docket No. 16), it is hereby **ORDERED** that:

1. Plaintiff's Motion to Remand (Docket No. 7) is **GRANTED**;

2. Defendants' Joint Motion to Sever (Docket No. 2) is **DENIED WITHOUT PREJUDICE**;

3. This matter is **REMANDED** to the Court of Common Pleas of Philadelphia County; and

4. The Clerk of the Court is directed to mark this matter as **CLOSED** for all purposes, including statistics.

BY THE COURT:

S/Gene E.K. Pratter
_____ GENE E.K. PRATTER
United States District Court